UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- X

The Estate of CACHIN ANDERSON, by the Co-Administrators of the Estate, JOYCE HEMINGWAY and KANISHA NEWMAN,

                                      Plaintiffs.

-against-

SERGEANT MICHAEL WOOD, CORRECTION OFFICER MARK PUTKOWSKI, NURSE NOELIA PARKER, NURSE RUTH FOREST,

                                      Defendants.
-------------------------------------------------------------------------------- X

**COMPLAINT & JURY DEMAND**

**20-CV-1985**

Plaintiffs, by their attorneys, LIAKAS LAW, P.C., as and for this Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which Plaintiff seeks relief for the violation of the rights of decedent CACHIN ANDERSON secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

2. The claim arises from the June 28, 2017 death of decedent CACHIN ANDERSON ("decedent") while held in the custody of the New York State Department of Correction and Community Supervision ("DOCCS"). DOCCS and its employees, acting under color of law, subjected Plaintiff to deliberate indifference.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper

## JURISDICTION & VENUE

4. This action is brought pursuant to 28 U.S.C. §§ 1331, 1343(a) and 2201, 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments to the United States Constitution. The Court

therefore has original jurisdiction arising from the federal questions presented by Plaintiff's causes of action.

5. Venue is laid within the United States District Court for the Southern District of New York in that Defendants are located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District of New York.

## PARTIES

6. Decedent CACHIN ANDERSON up until his death on June 28, 2017 was an inmate held in the custody of the New York State Department of Correction and Community Supervision ("DOCCS") at Sullivan Correctional Facility in Sullivan New York.

7. On or about September 7, 2017 JOYCE HEMINGWAY and KANISHA NEWMAN were appointed the co-administrators of the estate of decedent CACHIN ANDERSON by order of the State of Connecticut Court of Probate.

8. Sergeant Michael Wood is a Corrections Sergeant employed by DOCCS on the dates described herein, and was acting in the capacities of agent, servant, and employee of the State, within the scope of his employment, and acting under color of state law. The defendant was working as a Correction Sergeant at Sullivan Correctional Facility at the time of the incidents alleged in this Complaint. The defendant participated in, or witnessed and failed to intervene, in the deliberate indifference to the violation of Plaintiff's rights. Defendant is sued in his individual capacity.

9. Officer Mark Putkowski is a Corrections Officer employed by DOCCS on the dates described herein, and was acting in the capacities of agent, servant, and employee of the State, within the scope of his employment, and acting under color of state law. The defendant was working as a Correction Officer at Sullivan Correctional Facility at the time of the incidents alleged in this Complaint. The defendant participated in, or witnessed and

        failed to intervene, in the deliberate indifference to the violation of Plaintiff's rights. Defendant is sued in his individual capacity.

10. Nurse Noelia Parker is a registered nurse and was an employee of DOCCS on the dates described herein, and was acting in the capacities of agent, servant, and employee of the State, within the scope of her employment, and acting under color of state law. The defendant was working as a nurse at Sullivan Correctional Facility at the time of the incidents alleged in this Complaint. The defendant participated in, or witnessed and failed to intervene in, the deliberate indifference to the violation of Plaintiff's rights. Defendant is sued in her individual capacity.

11. Nurse Ruth Forest is a registered nurse and was an employee of the New York State Office of Mental Health ("OMH") on the dates described herein, and was acting in the capacities of agent, servant, and employee of the State, within the scope of her employment, and acting under color of state law. The defendant was working as a nurse at Sullivan Correctional Facility at the time of the incidents alleged in this Complaint. The defendant participated in, or witnessed and failed to intervene in, the deliberate indifference to the violation of Plaintiff's rights. Defendant is sued in her individual capacities.

## FACTUAL ALLEGATIONS

12. Decedent CACHIN ANDERSON was a native of Connecticut.

13. In or about 2013 Mr. Anderson was arrested and convicted in New York. He was sentenced to serve 0-10 years in DOCCS custody.

14. While he was in DOCCS custody Mr. Anderson suffered mental health issues, and was repeatedly place on "one-to-one" suicide watch for fear that he would harm himself.

15. On April 29, 2017 Mr. Anderson attempted to harm and/or kill himself by jumping headfirst from the sink in his cell at Green Haven Correctional Facility.

16. Throughout May 2017 Mr. Anderson continued to suffer serious mental health issues at Green Haven.

17. On or about May 30, 2017 Mr. Anderson was transferred to Sullivan Correctional Facility.

18. At Sullivan Mr. Anderson was initially placed in a Residential Crisis Treatment Program ("RCTP") maintained by OMH at Sullivan.

19. After approximately five days in the RCTP, Mr. Anderson was transferred into the Special Housing Unit ("SHU").

20. In SHU Mr. Anderson was locked in solitary confinement for 23 hours a day.

21. During his time in SHU, Mr. Anderson received medical and/or mental health visits at his cell, through the door.

22. During June 2017 Mr. Anderson was seen repeatedly by OMH staff regarding his mental health.

23. Upon information and belief, Defendants Wood, Putkowski, Parker and Forest were aware of Mr. Anderson's mental health history including his recent history of self-harm during June 2017. Upon information and belief, such knowledge was gained from review of Mr. Anderson's medical records, mental health records, incident reports and/or screening forms.

24. Upon information and belief, Nurse Forest was the admitting nurse for Mr. Anderson when he first arrived at Sullivan and therefore reviewed his OMH records as part of his initial screening.

25. On June 28, 2017 Officer Putkowski was the "rounds officer" for SHU at Sullivan during the overnight shift.

26. As the rounds officer Putkowski was responsible for making regular rounds of the SHU unit, approximately every 15 minutes, to monitor the inmates' conditions.

27. In the early morning hours of June 28, 2017 Officer Putkowski was alerted by another SHU inmate that Mr. Anderson was in need of mental health treatment.

28. Putkowski learned that Mr. Anderson was banging his head on the wall of his cell.

29. Mr. Anderson had visible bruises on his head from banging his head on the wall of his cell.

30. Mr. Anderson would not respond to the officers on duty in SHU.

31. Sgt. Wood was the supervisor overseeing SHU at Sullivan during the overnight shift on June 28, 2017.

32. Nurse Parker was the DOCCS nurse working the overnight shift at Sullivan Correctional Facility during the overnight shift on June 28, 2017.

33. Nurse Parker was the only medical professional on duty during the overnight shift on June 28, 2017. She was the only member of the DOCCS medical staff.

34. OMH had no overnight staff at Sullivan Correctional on June 28, 2017.

35. According to the facility log book, at approximately 4:25 am Nurse Parker and Sgt. Wood were notified that Mr. Anderson was "slamming his head into the wall" and "will not talk to officer and does have bump on head."

36. At or about 5:35 am Nurse Parker arrived for medical rounds in SHU.

37. At or about 5:48 am Sgt. Wood arrived at SHU with another officer.

38. After Sgt. Wood arrived he and Nurse Parker evaluated Mr. Anderson.

39. Over one hour and twenty minutes passed between Wood and Parker being notified of Mr. Anderson's need for mental health treatment and their visiting him.

40. When Wood and Parker evaluated Mr. Anderson, he confirmed to Nurse Parker that he had been banging his head on the wall.

41. When asked if he wanted to see OMH professionals, Mr. Anderson walked away from Nurse Parker and refused further communication.

42. Either Sgt. Wood or Nurse Parker had the power to order Mr. Anderson to be removed from SHU and placed on one-to-one suicide watch until he could be evaluated by OMH.

43. Neither Sgt. Wood nor Nurse Parker ordered Mr. Anderson to be removed from SHU and placed on one-to-one suicide watch.

44. Sgt. Wood did nothing to secure help for Mr. Anderson after leaving the SHU that night.

45. Sgt. Wood did not make a referral to OMH, or file any report regarding his interaction with Mr. Anderson.

46. Shortly before 6:00 am Nurse Parker returned the medical facility inside Sullivan.

47. When Nurse Parker arrived, Nurse Forest was in the medical facility preparing medications for her rounds.

48. Nurse Parker informed Nurse Forest that Mr. Anderson was banging his head on the wall of his cell.

49. Nurse Parker and Nurse Forest have differing accounts of the nature of their meeting.

50. Nurse Parker alleges that she was making a referral of Mr. Anderson to be seen by Nurse Forest or another OMH representative "right away."

51. Nurse Forest alleges that Nurse Parker mentioned that Mr. Anderson was banging his head on the wall as an offhand comment, that Nurse Parker had dealt with the situation and was not at that time making a referral for OMH treatment.

52. Nurse Forest is a trained mental health professional working for OMH and regularly meets with patients to provide emergency treatment with other OMH clinicians are not available.

53. Nurse Forest had the authority to order Mr. Anderson removed from SHU and/or placed on one-to-one suicide watch.

54. Nurse Forest did not visit Mr. Anderson, nor order him order him removed from SHU and/or placed on one-to-one suicide watch, nor did she report the self-harm to other OMH staff.

55. After Sgt. Wood and Nurse Parker left the SHU unit, Officer Putkowski continued making regular rounds.

56. The control room officer for the SHU unit directed Officer Putkowski to pay extra attention to Mr. Anderson during rounds that morning to ensure he did not injure himself further.

57. Officer Putkowksi did not pay any extra attention to Mr. Anderson during his rounds.

58. At or about 6:30 am Officer Putkowski made rounds.

59. Mr. Anderson was alive at 6:30 am.

60. Officer Putkowski made rounds again at or about 6:42 am.

61. At or about 6:42 am Putkowski noticed Mr. Anderson was hanging himself with a bed sheet inside his SHU cell.

62. Officer Putkowski issued a "code blue" signaling an emergency and awaited additional officers' arrival.

63. Several minutes passed before others arrived.

64. While waiting for other officers to arrive, Putkowki was outside Mr. Anderson's cell watching him hang himself through the cell's gate.

65. Eventually more officers arrived and took Mr. Anderson down from the place he had hung himself.

66. Medical staff arrived shortly after the additional officers.

67. Mr. Anderson was alive but in a severe medical condition when medical staff arrived.

68. Medical staff attempted to save Mr. Anderson's life, but were unable to.

69. Mr. Anderson was pronounced dead a few minutes later.

70. On the morning of June 28, 2017 defendants were aware that Mr. Anderson had a history of self-harm, was attempting self-harm that morning, and was non-responsive to officers and medical personnel.

71. It was obvious to defendants that Mr. Anderson needed immediate evaluation by mental health professionals, and to be protected from self-harm at least until that evaluation.

72. Defendants were therefore aware of the imminent risk of harm to Mr. Anderson.

73. Defendants took no steps to protect Mr. Anderson from self-harm.

74. Sgt. Wood and/or Nurse Parker could have made immediate referrals to OMH, could have had Mr. Anderson removed from SHU and placed in a mental health unit, could have had Mr. Anderson be placed in unit where he would not have access to items which he could harm himself, and/or placed him on one-to-one suicide watch. They did none of these things.

75. Nurse Forest could have visited Mr. Anderson personally, or ensured that another member of the OMH did so, she could have had Mr. Anderson removed from SHU and placed in a mental health unit, could have had Mr. Anderson be placed in unit where he would not have

access to items which he could harm himself, and/or placed him on one-to-one suicide watch. She did none of these things.

76. Officer Putkowski could have monitored Mr. Anderson more closely during his rounds, not allowing Mr. Anderson to be alone long enough to hang himself, or when he finally noticed Mr. Anderson's suicidal behavior, he could have immediately entered the cell to prevent Mr. Anderson from killing himself. He did neither of those things.

77. Unfortunately, defendants failed at every turn to protect decedent from harm, and ultimately caused his death.

78. Defendants, by failing to act, were deliberately indifferent to the imminent risk of harm to Mr. Anderson.

## DAMAGES

79. As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

    a. Pain and suffering;

    b. Loss of life;

    c. Emotional suffering;

    d. Loss of future income;

    e. Economic loss including funeral expenses.

## FIRST CAUSE OF ACTION
## 42 USC §1983

80. The preceding paragraphs are here incorporated by reference.

81. Defendants acted under color of law to deprive decedent of his civil, constitutional and statutory rights to be free from cruel and unusual punishment pursuant to the Eighth and

Fourteenth Amendments to the United States Constitution, and are liable to Plaintiff under 42 U.S.C. § 1983.

82. Defendants had actual knowledge of Cachin Anderson's serious medical and mental health needs, and were deliberately indifferent to those needs.  By failing to properly and correctly respond to information readily available regarding Cachin Anderson's mental and emotional deterioration and need for medical treatment, defendants failed to act in a reasonable time and manner in response to all of this information to protect and safeguard Cachin Anderson, an individual confined to their care and custody who they maintained a special relationship with and to whom they owed a duty of care.

83. Decedent was harmed by defendants' deliberate indifference.

84. The JOYCE HEMINGWAY and KANISHA NEWMAN have been appointed the personal representative of the decedent, and assert this claim on behalf of his estate.

## JURY DEMAND

85. Plaintiff hereby demands a jury trial in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

(A) compensatory damages in an amount to be determined at trial for each of Plaintiff's Causes of Action;

(B) punitive damages in an amount to be determined at trial;

(C) attorneys' fees and costs;

(D) such other further relief as the Court may deem just and proper.

DATED:   New York, New York
               March 4, 2020

Liakas Law P.C.
*Attorneys for Plaintiff*

By: Nicholas Mindicino, Esq.
65 Broadway, 13th Floor
New York, NY 10006
212-937-7765
NMindicino@liakaslaw.com

To:  Sergeant Michael Wood
Sullivan Correctional Facility
325 Riverside Dr.
Fallsburg, NY 12733

Correction Officer Mark Putkowski,
88 Little York Road
Warwick NY 10990

Nurse Noelia Parker
Sullivan Correctional Facility
325 Riverside Dr.
Fallsburg, NY 12733

Nurse Ruth Forest
Sullivan Correctional Facility
325 Riverside Dr.
Fallsburg, NY 12733